Approved: _Kaiya Arroyo_ (signature)
KAIYA ARROYO
Assistant United States Attorney

Before:  THE HONORABLE PAUL E. DAVISON
         United States Magistrate Judge
         Southern District of New York

22 mj 6172

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :   **COMPLAINT**

        - v. -                    :   Violations of 18 U.S.C.
                                      § 922(g)(1)
CLEON CLARK,                      :
                                      COUNTY OF OFFENSE:
              Defendant.          :   WESTCHESTER

                                  :

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        ENZO BAIA, being duly sworn, deposes and says that he is a Task Force Officer with the Federal Bureau of Investigation, and charges as follows:

COUNT ONE

(Felon in Possession of Ammunition)

        1.   On or about July 22, 2022, in the Southern District of New York, CLEON CLARK, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess ammunition, to wit, a .45 caliber round of ammunition, and the ammunition was in and affecting interstate commerce.

        (Title 18, United States Code, Section 922(g).)

        The bases for my knowledge and for the foregoing charge are, in part, as follows:

        2.   I am a Task Force Officer currently assigned to the Westchester County Safe Streets Task Force of the Federal

Bureau of Investigation ("FBI"), and I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, and my examination of photographs, reports, and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and photographs, and the actions, statements and conversations of others are reported herein, they are reported in substance and in part.

3.    Based on my review of law enforcement records, including the criminal history report of CLEON CLARK, the defendant, I have learned, in substance and in part, that CLARK has been convicted of a felony offense.  Most recently, on or about October 11, 2007, CLARK was convicted in Westchester County Court of Attempted Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law Section 160.05, a felony, and sentenced principally to a term of 35 to 42 months' imprisonment.

4.    Based on my involvement in this investigation, my personal observations, my conversations with other law enforcement officers, my review of law enforcement reports and records, my review of surveillance footage, and my training and experience, I have learned the following in substance and in part:

a.    On or about July 22, 2022, at approximately 9:08 p.m., surveillance video footage taken from two cameras ("Surveillance Camera-1" and "Surveillance Camera-2") belonging to a commercial building located on East Third Street in Mount Vernon, New York ("Commercial Building-1") show a group of individuals conversing and throwing dice on the south sidewalk of East Third Street between South First Avenue and South Second Avenue (the "Sidewalk").  One of the members of the group was a black male wearing a black durag, black shirt, black shorts, a black medical mask, multicolored sneakers, and a distinctive chain with a circular medallion (the "Shooter").

b.    At approximately 9:08 p.m., footage from Surveillance Camera-2 shows an individual in a white shirt ("Individual-1") approach the Shooter and shove him backwards.  Footage from Surveillance Camera-1 then shows

the Shooter pick up a black sling backpack (the "Black Backpack"), unzip the Black Backpack, and reach his hand inside.

   c.   At approximately 9:09 p.m., the Shooter pulls out a black handgun (the "Handgun") from inside the Black Backpack, discards the Black Backpack on the ground, cocks the Handgun, and charges after Individual-1.   The Shooter then brandishes the Handgun and strikes Individual-1 with the Handgun multiple times.

   d.   The Shooter and Individual-1 then engage in a physical altercation in the street before the Shooter retreats into the vestibule of a second commercial building located along East Third Street between South First Avenue and South Second Avenue ("Commercial Building-2"), followed closely by Individual-1.   Surveillance footage from within the vestibule of Commercial Building-2 ("Surveillance Camera-3") shows an individual wearing a black durag, black shirt, black shorts, and distinctive grey, black, and orange shoes (the "Orange-Grey Shoes"), whose appearance is consistent with the Shooter, enter the vestibule, turn, and continue arguing with Individual-1.

   e.   Footage from Surveillance Camera-2 and Surveillance Camera-3 then show the individual who appears to be the Shooter follow Individual-1 out of the vestibule and down the Sidewalk towards Commercial Building-1. Individual-1 turns on the Shooter, who begins walking away along the Sidewalk towards South Second Avenue.

   f.   At approximately 9:11 p.m., footage from Surveillance Camera-1 and Surveillance Camera-2 shows the Shooter walk into the street away from Individual-1, with Individual-1 following.   Then, the Shooter abruptly turns towards Individual-1, draws the Handgun, and lunges towards Individual-1.

   g.   After lunging toward Individual-1, the Shooter walks back into the street.   Approximately five seconds later, Individual-1 attempts to follow again, at which point the shooter turns sharply towards Individual-1, runs toward him with the Handgun raised, and lunges towards him again.

h.    While there is no audio in the surveillance
recording, the surveillance video shows one or more
individuals standing close by simultaneously jerk backward
and/or move away each time the Shooter turns and brandishes
his weapon.  Based on my training and experience, and my
review of the surveillance footage, I believe the people
gathered on the Sidewalk were reacting to a shot or shots
being fired.

i.    At approximately 9:20 p.m., law enforcement
officers with the Mount Vernon Police Department ("MVPD")
responded to the scene following a report of shots fired.
MVPD officers canvassed the area and recovered one .45
caliber shell casing manufactured by CBC Global Ammunition
(the "CBC Shell Casing") on the street near the location
that the Shooter brandished the Handgun and lunged towards
Individual-1.  An image of the CBC Shell Casing is set
forth below:



j.    On or about July 25, 2022, law enforcement
officers returned to the area of the shooting to collect
surveillance footage from Commercial Building-1 and

Commercial Building-2 (the "Commercial Buildings").  While inquiring about footage, the manager of one of the Commercial Buildings (the "Manager") informed law enforcement that CLEON CLARK, the defendant, also had approached the Manager to request that the Manager delete any surveillance footage. An FBI agent familiar with the matter ("Agent-1") subsequently reviewed the surveillance footage taken from Surveillance Camera-1, Surveillance Camera-2, and Surveillance Camera-3.  Agent-1, who is familiar with CLARK, identified CLARK as the Shooter in the video.

5.    Following the recovery of the surveillance footage, FBI agents searched federal databases for information regarding "Cleon Clark" and discovered that his address matched a residential building located on Morningside Place in Yonkers, New York (the "Morningside Address").  Law enforcement officers from the Yonkers Police Department also searched local government databases and found an ambulance report from a "Clarke" identifying the Morningside Address as his residence.

6.    On or about July 27, 2022, FBI Agents began surveillance of the Morningside Address. Based on my involvement in this investigation and my personal observations, I have learned the following in substance and in part:

a.    At approximately 11:45 a.m., FBI Agents observed CLEON CLARK, the defendant, enter and exit the Morningside Address.  CLARK was observed wearing the distinctive chain with the circular medallion that the Shooter was seen wearing in surveillance video.

b.    At approximately 1:41 p.m., FBI Agents arrested CLARK as he left the Morningside Residential Building and began walking down the street.

7.    On or about July 27, 2022, at approximately 5:40 p.m., FBI Agents executed a search and seizure warrant issued by the Honorable Paul E. Davison, United States Magistrate Judge, earlier that day.  During the search, law enforcement officers recovered:

a. The Orange-Grey Shoes; and

b. One .45 caliber round of ammunition manufactured by Federal Ammunition, shown below:



8.      Based on my discussions with other law
enforcement members and my participation in this investigation,
I have learned in substance and in part that a firearms expert
with the Bureau of Alcohol, Tobacco, Firearms, and Explosives
has examined photographs of the recovered CBC Shell Casing and
has determined that the CBC Shell Casing was not manufactured in
the State of New York.

WHEREFORE, deponent respectfully requests that CLEON CLARK,
the defendant, be imprisoned or bailed, as the case may be.

_TFO E. Baia_

TASK FORCE OFFICER ENZO BAIA
Federal Bureau of Investigation


Sworn to before me this
___ day of July, 2022


THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK